IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,    No. 3:23-cr-00144-HZ

        Plaintiff(s),    OPINION & ORDER

v.

JESSIE CHAVEZ-ECHEVERRIA,

        Defendant(s).

Leah K. Bolstad
United States Attorney's Office
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

    Attorneys for Plaintiff

Tihanne Mar-Shall
Federal Public Defender Oregon
101 S.W. Main Street
Suite 1700
Portland, OR 97204

    Attorneys for Defendant

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

This matter is before the Court regarding sentencing for Defendant Jessie Chavez-Echeverria.

## BACKGROUND

On May 2, 2023, Defendant was indicted on one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On March 20, 2024, Defendant pled guilty to that charge. In the Presentence Report ("PSR") it was recommended that Defendant's base offense level be increased to 26 pursuant to United States Sentencing Guideline ("USSG") 2K2.1(a)(4)(A) because, among other things, Defendant committed the offense subsequent to sustaining two felony convictions for crimes of violence: Washington felony assault III and Oregon felony attempted assault I.

On June 12, 2024, the Court held a sentencing hearing at which Defendant asserted that his conviction for attempted assault I is not a crime of violence and, therefore, should not be grounds to increase his base offense level. The Court took the issue under advisement.

## DISCUSSION

**I.    Parties' Positions**

    **A.    Defendant**

Defendant asserts in his supplement to the PSR that Oregon attempted assault I "is not a crime of violence" because "[t]he state's definition of a 'substantial step' [under Or. Rev. Stat. § 161.405(1)[1]] does not match the federal force clause in the guidelines." Def. Memo,

---

[1] Or. Rev. Stat. § 161.405(1) provides: "A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime."

2 – OPINION & ORDER

ECF 32 at 4 (citing *United States v. Harms*, No. 3:16-cr-00028-HZ, 2017 WL 4918513, at *4 (D. Or. Oct. 31, 2017)).

Defendant notes that the Ninth Circuit recently defined "attempted use" of physical force "for purposes of a similar force clause and held that it requires 'a substantial step toward the use of physical force.'" *Id.* (quoting *United States v. Linehan,* 56 F.4th 693, 702 (9th Cir. 2022)). Defendant concedes that the language of § 161.405(1), is similar to the definition of federal attempt set out in *Linehan*, but asserts that in practice Oregon's "substantial step standard . . . is meaningfully broader . . . and includes acts that would be mere preparation federally." Def. Memo. at 4 (citing *Sandoval v. Sessions,* 866 F.3d 986 (9th Cir. 2017). According to Defendant, because § 161.405(1) defines substantial step more broadly in practice than the generic federal definition of attempt, there is no categorial match between Oregon attempted assault I and federal generic attempt. As a result, Defendant's state "conviction for attempted assault I does not qualify as a crime of violence under the guidelines." *Id.* at 5.

**B.      Government**

The government asserts in its Sentencing Memorandum that "post-*Kimbrough* [Defendant's] conviction for attempted assault I qualifies as a crime of violence." Gov't Memo., ECF 33, at 5. In its Supplemental Sentencing Memorandum the government asserts Defendant "sidetracks [the attempt analysis] by comparing Oregon's attempt statute . . . and the federal attempt statute." Gov't. Suppl. Memo., ECF 34, at 4 (citing *United States v. Door*, 917 F.3d 1146 (9th Cir. 2019)). The government asserts this is the wrong categorial approach for a force clause analysis, rather the state crime need only "necessarily entail" the use, threatened use, or attempted use of force, which, according to the government, Oregon attempted assault I does.

3 – OPINION & ORDER

According to the government, therefore, Defendant's attempted assault I conviction is a qualifying crime of violence under USSG § 2K2.1(a)(1).

**I.      USSG Crime of Violence**

USSG § 2K2.1(a)(1) provides in relevant part that the Court should apply base offense level 26 when: " (A) the offense involved a . . . semiautomatic firearm that is capable of accepting a large capacity magazine[2] . . . and (B) the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of . . . a crime of violence." Crime of violence in the context of § 2K2.1(a)(1) "has the meaning given that term in § 4B1.2(a)(1) and Application Note 1 of the Commentary to § 4B1.2." USSG § 2K2.1 cmt. n.1.

USSG § 4B1.2(a) defines crime of violence as:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

§ 4B1.2(a)(1) is generally referred to as the "force" or "elements" clause[3] and § 4B1.2(a)(2) is often called the "enumerated offenses" clause. *United States v. Castro*, 71 F.4th 735, 738 (9th Cir. 2023). It is undisputed that attempted assault I is not one of the enumerated offenses set out in § 4B1.2(a)(2). The crime of violence analysis here, therefore, proceeds under the force clause.

---

[2] The Court concluded at the sentencing hearing that the firearm involved in the instant offense satisfied § 2K2.1(a)(1)(A).
[3] The parties referred to § 4B1.2(a)(1) as the force clause in their materials and at the hearing. The Court, therefore, uses that description in this Opinion and Order.

4 – OPINION & ORDER

## II.   Categorial Approach

"To determine whether a felony is a crime of violence, [the Ninth Circuit] appl[ies] the categorical approach" set out in *Taylor v. United States*, 495 U.S. 575, (1990). *Castro*, 71 F.4th at 738 (citing *United States v. Prigan*, 8 F.4th 1115, 1118–19 (9th Cir. 2021)).

Relying on *Door* the government asserts that the approach proposed by Defendant is not the correct categorial approach for a force clause analysis. In *Door* the court affirmed that to "determine whether a prior conviction qualifies as a crime of violence, we apply the categorical approach first outlined in *Taylor*," which "requires courts to compare the elements of the statute of conviction with the federal definition of 'crime of violence' to determine whether the statute of conviction criminalizes a broader range of conduct than the federal definition captures." *Door*, 917 F.3d at 1150 (citing *United States v. Edling*, 895 F.3d 1153, 1155 (9th Cir. 2018)). "[T]he precise inquiry differs depending on whether the offense is alleged to qualify as a crime of violence pursuant to the force clause [or] the enumerated offenses clause." *Id.* To determine whether a prior conviction qualifies under the force clause,

> the question is whether the crime of conviction "has as an element the use or threatened use of physical force against the person of another, with 'physical force' understood to mean in this context 'violent force - that is, force capable of causing physical pain or injury to another person.'" *Edling*, 895 F.3d at 1156 (quoting *Johnson*, 559 U.S. at 140). If the crime of conviction necessarily entails the use or threatened use of violent physical force, it is considered a categorical match for a crime of violence pursuant to the force clause of § 4B1.2(a)(1), and the inquiry ends.

*Id.* at 1151. In contrast, a prior conviction qualifies under the enumerated offenses clause "if the elements of one of the generic federal crimes listed in that clause fully subsume the elements of the crime of conviction." *Id.* (citing *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016)). "If the crime of conviction falls within the generic federal definition - meaning it does not punish a broader range of conduct than the generic offense - the conviction qualifies as a crime of

5 – OPINION & ORDER

violence." *Id.* (citation omitted). Because the inquiry here proceeds under the force clause the government asserts the Court need only inquire whether attempted assault I "has as an element the use or threatened use of physical force against the person of another."

In *Door*, however, the defendant's prior convictions were for second degree assault and felony harassment. That case did not involve analysis of prior convictions for an attempt offense. The Ninth Circuit has made clear that courts must engage in "two related . . . analyses . . . to determine whether a prior conviction for an attempt offense qualifies as a crime of violence": "whether the defendant's conviction establishes that he committed the elements of the generic definition of 'attempt' *and* that the underlying offense he attempted meets the generic definition of that offense." *United States v. Gomez-Hernandez*, 680 F.3d 1171, 1175 (9th Cir. 2012)(citing *United States v. Saavedra–Velazquez*, 578 F.3d 1103, 1106–07 (9th Cir. 2009); *Rebilas v. Mukasey*, 527 F.3d 783, 787 (9th Cir. 2008))(emphasis in *Gomez-Hernandez*). Accordingly, in the context of an attempt offense, such as the one here, courts must not only evaluate whether the crime of conviction has as an element the use or threatened use of physical force, but they must also determine whether the defendant's conviction establishes that he committed the elements of the federal generic definition of assault. "This requires, for better or worse, that we ignore what actually occurred during the defendant's prior felony; instead, we consider only whether the prior felony's elements cover conduct that 'sweeps more broadly than the conduct covered by § 4B1.2(a)'s crime-of-violence definitions.'" *Castro*, 71 F.4th at 738 (quoting *Prigan*, 8 F.4th 1119). If the prior felony's elements cover conduct that sweep more broadly "then the prior felony is not categorically a crime of under § 2K2.1(a)." *Id.*

Accordingly, the disputed question here is whether Oregon attempt under § 161.405 sweeps more broadly than the federal generic definition of attempt.

6 – OPINION & ORDER

### III. Authorities

#### A. Pre-*Kimbrough* Decisions

In 2017 this Court held that a conviction for Oregon attempted assault II did not qualify as a crime of violence under the USSG because "Oregon's attempt law is broader than the federal generic definition of attempt." *United States v. Harms*, No. 3:16-cr-00028, 2017 WL 4918513, *4 (D. Or. Oct. 31, 2017). This Court noted that the federal generic definition of attempt is "the specific intent to 'engage in criminal conduct and . . . an overt act which is a substantial step towards committing the crime.'" *United States v. Sarbia*, 367 F.3d 1079, 1086 (9th Cir. 2004)(quoting *United States v. Gracidas–Ulibarry*, 231 F.3d 1188, 1192 (9th Cir. 2000)(en banc)). This Court found that the standard for attempt under § 161.405(1) and federal generic attempt "are facially similar and both rely on a 'substantial step' requirement," but the "application of the standard has differed." *Harms*, 2017 WL 4918513, at *4. This Court examined several cases in which "defendants were convicted under Oregon attempt law because their solicitation of a crime was viewed as an 'attempt,'" including *State v. Johnson*, 202 Or. App. 478 (2005). *Id.* In *Johnson* the court held that solicitation could qualify as a "substantial step" when the defendant's actions exceed mere preparation, advance the criminal purpose charged, and provide some verification of the existence of that purpose. 202 Or. App. at 489. This Court noted that the Oregon Court of Appeals had applied the *Johnson* holding to later cases, reiterating that "under the right circumstances in Oregon, solicitation can constitute attempt." *Harms*, 2018 WL 4918513, at *5 (citing *State v. Badillo*, 260 Or. App. 218 (2013); *State v. Sargent*, 110 Or. App. 194 (1991); *State v. Kimbrough*, 285 Or. App. 84 (2017)).

This Court also discussed the Ninth Circuit's analysis of Oregon attempt law in *Sandoval.* In that case the Ninth Circuit considered whether the defendant's prior conviction for

delivery of a controlled substance under Oregon law qualified as a "drug trafficking crime" under the Controlled Substances Act. The court reviewed Or. Rev. Stat. § 161.405 and Oregon cases interpreting that statute and concluded that "[u]nder Oregon law, solicitation - even without possession - is a substantial step toward committing the crime of attempted delivery under ORS 475.992(1)." *Id.* at 990 (citing *Sargent*; *State v. Lawrence*, 231 Or. App. 1 (2009)). The Ninth Circuit found that unlike Oregon attempt, "mere solicitation of controlled substances" was not a "substantial step" toward "'attempted' delivery under the Controlled Substances Act." *Id*. at 989 (citations omitted). The Ninth Circuit, therefore, concluded that the defendant's Oregon conviction was not a categorial match to a drug trafficking crime under the federal statute. This Court noted in *Harms* that although *Sandoval* involved a drug trafficking crime rather than Oregon attempted assault, *Sandoval* controlled the court's reasoning. Specifically, *Sandoval* involved the generic federal definition of attempt and the Ninth Circuit, citing *Johnson*, 202 Or. App. at 489, noted that its analysis under state law was consistent with non-drug attempt cases.

    Other judges in this district reached the same conclusion regarding Oregon attempt convictions. *See, e.g., United States v. Do*, No. 3:17-cr-00431-SI, 2018 WL 6204426, *6 (D. Or. Nov. 28, 2018)("because attempt under Oregon law is broader than federal generic attempt, [the defendant's] charges for the unlawful use of a weapon under the 'attempts to use' prong may not serve as a qualifying crime of violence"); *United States v. Durr*, No. 3:09-cr-00080-JO (D. Or. Sept. 11, 2017(slip op. at 5)(finding the Oregon attempt statute overbroad and concluding that Oregon attempted robbery I does not qualify a crime of violence under the USSG).

### III. Developing Case Law

#### A. *Kimbrough*

At the sentencing hearing the government argued that this Court's decision in *Harms* was correct at the time it was issued, but is now no longer a correct interpretation of § 161.405(1) because in *State v. Kimbrough,* 364 Or. 66 (2018), the Oregon Supreme Court clarified the landscape of attempt under Oregon law and it no longer encompasses solicitation.

In *Kimbrough* the defendant asked another inmate, Crowley, if he "knew anyone who had 'killed someone before.'" 364 Or. at 68. Crowley replied he had acquaintances that could help the defendant. The defendant wrote a letter addressed to an "unknown hitman" requesting that he kill the defendant's father- and brother-in law and threaten witnesses in the defendant's burglary case. *Id.* at 69-70. The defendant provided information about the requested victims' addresses and telephone numbers, a map of his father-in-law's house, and locations of safes in the house. Crowley, however, did not pass the letter on to a hitman. Rather he reached out to jail staff, expressed concern that the defendant was dangerous, provided jail staff and law enforcement with defendant's letter, and gave them various notes that the defendant had sent him asking when the hitman would carry out the murders. *Id*. at 70. Ultimately, the defendant was charged with, among other things, four counts of attempted aggravated murder, three counts of attempted murder, and two counts of tampering with a witness. At trial the defendant moved for a judgment of acquittal those charges asserting the state failed to present evidence that the defendant's conduct was "a 'substantial step' toward the [those] crimes, which is required for his conduct to constitute an attempt." *Id*. at 71. The court denied that motion. The defendant was found guilty of, among other things, the four counts of attempted aggravated murder, three counts of attempted murder, and two counts of tampering with a witness. The defendant appealed

9 – OPINION & ORDER

and assigned error "to the trial court's denial of his motion for a judgment of acquittal on the attempted aggravated murder, attempted murder, and witness tampering counts." *Id.* The Court of Appeals "determined that defendant's actions did rise to the level of a substantial step and affirmed defendant's convictions." *Id*. at 71-72. The Oregon Supreme Court granted review. On review the defendant argued that "a bare solicitation to commit a crime cannot constitute an attempt to commit the crime [under Or. Rev. Stat. § 161.405(1)] because the legislature intended the crimes of solicitation and attempt to be separate and not overlapping." *Id.* at 81-82. The Court reviewed Oregon case law and legislative history as well as the discussion of the 1970 Commission that redrafted Oregon's Criminal Code and found they "ma[de] clear that the crime of attempt requires the substantial step to be taken toward a crime that the defendant intends to take part in personally . . . not a crime that will be committed by someone else." *Id*. at 84-85. Ultimately the Court concluded "the rule is that to be guilty of attempt, the defendant must personally engage in conduct that constitutes a substantial step, and that substantial step must be toward a crime that the defendant intends to participate in himself." *Id.* at 89. The Court concluded that the evidence showed the defendant intended all of the substantive crimes to be committed by the hitman and he "took steps toward realizing that goal," but there was no evidence that the defendant intended to personally engage in the criminal conduct. "Because no substantial step occurred, Oregon's law of attempt places that conduct on the preparatory side of the line," and the Court concluded the trial court erred in denying the defendant's motion for judgment of acquittal on the attempted aggravated murder, attempted murder, and tampering with a witness counts. *Id. at 90*. The Court noted that the rule it announced, "does not mean that a defendant can never be guilty of both solicitation and attempt, even based on a 'mere' or 'bare' solicitation." *Id*. Its holding, however, may cast doubt on the continued validity of *Johnson*,

10 – OPINION & ORDER

*Badillo*, and *Sargent* because those cases involved solicitation by the defendants to commit crimes that they did not intend to participate in themselves.

  **B.** *Hubbell*

  In 2021 the Oregon Court of Appeals revisited its use in *State v. Boyd*, 92 Or. App. 51 (1988), of § 161.405(1) to define "attempted transfer" of drugs under Or. Rev. Stat. § 475.005(8).[4] *State v. Hubbell*, 314 Or. App. 844 (2021), aff'd, 371 Or. 340 (2023). The court noted it had declined to expand *Boyd* in two recent cases "explaining that ORS 161.405 was not a definition of the word 'attempt' but rather a provision setting out the elements of a separate, inchoate crime." *Id.* (citing *State v. Rapp*, 306 Or. App. 265 (2020); *State v. Stockert*, 303 Or. App. 314 (2020)). In *Rapp* and *Stockert*, "[i]nstead of importing the meaning from [§ 161.405(1)] [the court] looked to a contextually appropriate definition of 'attempt' - one that preserved the ordinary hierarchy of offenses." *Id.* In *Hubbell* the court went farther and concluded "that *Boyd's* leap - defining the word 'attempt' within a substantive statute to be the inchoate crime of attempt - was not just wrong but plainly wrong." *Id.* at 848.

  The circumstances of *Hubbell* differ from those here because attempted assault I, is an inchoate crime and, therefore, the use of the attempt standard found in § 161.405(1) is appropriate. The court's discussion of attempt in *Hubbell*, however, provides some guidance for the issue before this Court. Specifically, the court, citing *Sandoval,* noted that its holding in *Boyd* has led the "United States government [to] [successfully] contend[] at times that a conviction on a *Boyd* theory is an aggravated felony," and indicated that such a contention would no longer be

---

[4] Or. Rev. Stat. § 475.005(8)  states: "'Deliver' or 'delivery' means the actual, constructive or *attempted transfer* of, or possession with the intent to transfer, other than by administering or dispensing, from one person to another, a controlled substance, whether or not there is an agency relationship." Emphasis added

11 – OPINION & ORDER

proper because of its conclusion that § 161.405(1) is no longer appropriate to define attempt under § 475.005(8). 314 Or. App. at 866.

## IV.   Analysis

As noted, in *Kimbrough* the Court declined to find that mere or bare solicitation was insufficient to support attempt. In theory, therefore, § 161.405(1) still "sweeps more broadly" than the federal generic definition of attempt. The Supreme Court has held, however, that

> to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

*Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). The Ninth Circuit has applied that rule in two ways: "[W]hen the state statute's greater breadth is evident from its text, a defendant may rely on the statutory language to establish the statute as overly inclusive." *United States v. Vidal*, 504 F.3d 1072, 1082 (9th Cir. 2007)(en banc)(internal citations and quotation marks omitted), *abrogated on other grounds as recognized in United States v. Bautista*, 989 F.3d 698, 704 (9th Cir. 2021). When the state law's overbreadth is not "evident from its text," the party arguing for overbreadth must find a relevant case establishing a "realistic probability" of overbroad application. *Vidal*, 504 F.3d at 1082 ("In the absence of any case in which the state courts in fact did apply the statute in the special (nongeneric) manner, this argument failed for lack of evidence that such an application of the state statute was a realistic probability [and] not a theoretical possibility." (internal citations and quotation marks omitted)).

Although *Gonzales* and *Vidal* involved evaluation of generic definitions of listed crimes rather than the generic definition of attempt, the underlying reasoning requiring that overbreadth must be more than a theoretical possibility would seem to apply here as well. The alleged overbreadth of § 161.405(1) is not evident from its text as discussed above, therefore, for it to be overbroad there must be a relevant case establishing a "realistic probability" of overbroad application that survives after *Kimbrough* and *Hubbell*.

Although the *Kimbrough* court declined to find mere or bare solicitation was always insufficient to establish intent, the Court noted only one crime under which mere solicitation might be a sufficient step for attempt under § 161.405(1). 364 Or. at 89 ("[T]here are at least some crimes where the defendant is *likely* to both solicit criminal conduct and intend to personally engage in the same conduct.")(emphasis added). The Court suggested that bribery[5] could be such a crime and noted "there are *likely* other crimes, and certainly other factual circumstances, where such an overlap may occur," but it identified no other crimes or circumstances. *Id.* (emphasis added).

In *Sandoval* the Ninth Circuit relied on a number of Oregon cases in which Oregon courts found solicitation was sufficient to establish a substantial step for Oregon attempt that at the time *Sandoval* was issued established there was a "realistic probability" of overbroad application of § 161.405(1). *Sandoval*, 866 F.3d at 990 ("Under Oregon law, solicitation - even without possession - is a 'substantial step' toward committing the crime of attempted delivery.")(citing *Sargent*; *State v. Lawrence*, 231 Or. App. 1 (2009); *State v. Self*, 75 Or. App. 230 (1985)). After *Kimbrough* and *Hubbell*, however, those cases no longer support the conclusion that solicitation

---

[5] The Court also noted that in the past sodomy might have constituted such a crime, but "[t]he modern crime of sodomy is not the prohibition on consensual sexual activity between adults," and, therefore, likely no longer qualifies. *Id.*

is a substantial step for attempt. In fact, in 2023 the Oregon Court of Appeals, relying on *Hubbell*, overruled *Sargent*; *State v. Scott*, 283 Or. App. 566 (2017); *State v. Haddon*, 286 Or. App. 198 (2017); *State v. Shupe*, 276 Or. App. 496 (2016); *State v. Guzman*, 140 Or. App. 347 (1996); and *State v. Lynch*, 119 Or App 97 (1993), noting its rejection in *Hubbell* of the holding that "if a person solicits another to engage in conduct constituting an element of the crime of delivery, they have committed delivery by taking a substantial step toward commission of the crime." *State v. Serbin*, 324 Or. App. 792, 795-96 (2023). The other cases cited in *Sandoval* that, relying on *Boyd*, held "offering to sell a controlled substance constitutes a substantial step toward a completed transfer of that substance," 866 F.3d. at 991 (citing *State v. Pollock*, 189 Or. App. 38, 43 (2003)), no longer support the conclusion that solicitation is a substantial step for attempt after *Hubbell*. Similarly, *Kimbrough* suggests in *dicta* that the Oregon Court of Appeals' statement in *Johnson* that "[s]olicitation of a guilty person qualifies as a 'substantial step'" under certain circumstances may no longer be good law. 202 Or. App. at 489. Specifically, in *Kimbrough* the Court stated "[s]omeone who solicits a guilty agent to commit a crime . . . does not engage in acts constituting a 'substantial step toward commission of the crime' within the meaning of ORS 161.405." 364 Or. at 88. Accordingly, the cases on which the court relied in *Sandoval* for its conclusion that § 161.405(1) includes solicitation have been either explicitly overruled or called into question.

      Similarly, the state cases that this Court relied on in *Harms* to show that solicitation may be a substantial step under § 161.405(1) have been overruled or called into question. For example, this Court relied on *Johnson* and *State v. Badillo*, 260 Or. App. 218 (2013). As noted, *Johnson's* statements that solicitation may constitute a substantial step under § 161.405(1) are called into question by *Kimbrough* and in *Serbin* the Oregon Court of Appeals explicitly

14 – OPINION & ORDER

overruled *Sargent*. *Badillo,* in turn, relied on *Johnson* and *Sargent* in concluding that solicitation in that case constituted a substantial step under § 161.405(1) and, therefore, it is also called into question.

Defendant does not identify any cases that have not been overruled or called into question or that relied on Oregon cases that have not been overruled or called into question to support his assertion that solicitation is a substantial step under § 161.405(1). In light of the rulings discussed above, the Court finds Defendant has not established a "realistic probability" of overbroad application of § 161.405(1) post *Kimbrough, Hubbell,* and *Serbin*. The Court, therefore, concludes § 161.405(1) does not sweep more broadly than federal generic attempt post *Kimbrough, Hubbell,* and *Serbin*. As a result, there is a categorial match between § 161.405(1) and federal generic attempt. Accordingly, Defendant's Oregon conviction for attempted assault I qualifies as a crime of violence under USSG § 2K2.1(a)(1).

## CONCLUSION

Defendant's conviction for attempted assault I may be considered a "crime of violence" for the purpose of determining his base offense level under USSG § 2K2.1(a)(1).

IT IS SO ORDERED.

DATED:___July 8, 2024_____.

                                                 MARCO A. HERNÁNDEZ
                                                 United States District Judge